

# State of North Carolina

**ROY COOPER**
GOVERNOR

**MARCH 10, 2020**

**EXECUTIVE ORDER NO. 116**

**DECLARATION OF A STATE OF EMERGENCY TO COORDINATE RESPONSE AND PROTECTIVE ACTIONS TO PREVENT THE SPREAD OF COVID-19**

**WHEREAS**, COVID-19 is a respiratory disease that can result in serious illness or death by the SARS-CoV-2 virus, which is a new strain of coronavirus previously unidentified in humans and which can spread from person to person; and

**WHEREAS,** the World Health Organization declared COVID-19 a Public Health Emergency of International Concern on January 30, 2020; and

**WHEREAS**, the Centers for Disease Control and Prevention ("CDC") has warned of the high public health threat posed by COVID-19 globally and in the United States and has deemed it necessary to prohibit or restrict travel to areas designated by the CDC; and

**WHEREAS**, on January 31, 2020, the United States Department of Health and Human Services Secretary declared a public health emergency in the United States for COVID-19 under Section 319 of the Public Health Service Act; and

**WHEREAS**, the North Carolina Department of Health and Human Services ("NCDHHS") confirmed multiple cases of COVID-19 in North Carolina as of March 10, 2020; and

**WHEREAS**, NCDHHS has organized a Public Health Incident Management Team to manage the public health impacts of COVID-19 in this state; and

**WHEREAS**, health insurance companies have begun to waive the costs for COVID-19 testing and are encouraged to continue to ensure ease of access to health care for diagnostics and treatment without regard to the issue of cost or a patient's ability to pay; and

**WHEREAS**, first responders and health care professionals remain integral to ensuring the state is best situated to respond to and mitigate the threat posed by COVID-19 and such first responders and health care professionals should have the availability of all necessary personal protective equipment and continue to follow all necessary response protocols; and

**WHEREAS**, N.C. Gen. Stat. §§ 166A-19.10 and 166A-19.20 authorize the undersigned to declare a state of emergency and exercise the powers and duties set forth therein to direct and aid in response to, recovery from, and mitigation against emergencies; and

**WHEREAS**, pursuant to N.C. Gen. Stat. § 166A-19.30(b)(3), the undersigned, with the concurrence of the Council of State, may regulate and control the flow of vehicular traffic and the congregation of persons in public places or buildings; and

**WHEREAS**, pursuant to N.C. Gen. Stat. § 166A-19.30(b)(4), the undersigned, with the concurrence of the Council of State, may waive a provision of any regulation or ordinance of a state agency which restricts the immediate relief of human suffering; and

**WHEREAS**, pursuant to N.C. Gen. Stat. § 166A-19.30(b)(5), the undersigned, with the concurrence of the Council of State, may perform and exercise other such functions, powers and duties as are necessary to promote and secure the safety and protection of the civilian population; and

**WHEREAS**, pursuant to N.C. Gen. Stat. § 166A-19.10(b)(7), the undersigned has authority to requisition state property and state resources to utilize state services, equipment, supplies and facilities in response to a state of emergency; and

**WHEREAS**, pursuant to N.C. Gen. Stat. § 166A-19.70, the undersigned may declare that the health, safety, or economic well-being of persons or property requires that the maximum hours of service for drivers prescribed by N.C. Gen. Stat. § 20-381 and similar rules should be waived for essentials, as defined in N.C. Gen. Stat. § 166A-19.70(f)(3), for assisting in the restoration of utility services; and

**WHEREAS**, pursuant to N.C. Gen. Stat. § 166A-19.70(g), upon the recommendation of the North Carolina Commissioner of Agriculture and the existence of an imminent threat of severe economic loss of livestock, poultry or crops ready to be harvested, the Governor shall direct the North Carolina Department of Public Safety ("DPS") to temporarily suspend weighing vehicles used to transport livestock, poultry or crops to include timber ready to be harvested; and

**WHEREAS**, 49 C.F.R. § 390.23 allows the governor of a state to suspend the rules and regulations under 49 C.F.R. §§ 390-399 for up to thirty (30) days if the governor determines that an emergency condition exists; and

**WHEREAS**, the undersigned, in consultation with the Secretary of NCDHHS, has determined it is necessary and appropriate to act to ensure that COVID-19 remains controlled and that residents and visitors in North Carolina remain safe and secure; and

**WHEREAS**, the undersigned has sought and obtained concurrence from the Council of State consistent with the Governor's emergency powers authority in N.C. Gen. Stat. § 166A-19.30.

**NOW, THEREFORE**, by the authority vested in me as Governor by the Constitution and the laws of the State of North Carolina, **IT IS ORDERED**:

### Section 1. State of Emergency

I hereby declare a State of Emergency, as defined in N.C. Gen. Stat. §§ 166A-19.3(6) and 166A-19.3(19) for the State of North Carolina based on the public health emergency posed by COVID-19.

The emergency area, as defined in N.C. Gen. Stat. §§ 166A-19.3(7) and 166A-19.20(b) is the State of North Carolina (the "Emergency Area").

### Section 2. Application

All state and local government entities and agencies are ordered to cooperate in the implementation of the provisions of this declaration and the provisions of the North Carolina Emergency Operations Plan (the "Plan").

### Section 3. Delegation of Authority

I delegate to Erik A. Hooks, the Secretary of the North Carolina Department of Public Safety ("DPS"), or his designee, the power and authority granted to and required of me by Article 1A of Chapter 166A of the North Carolina General Statutes for the purpose of implementing the Plan and deploying the State Emergency Response Team to take the appropriate actions necessary to promote and secure the safety and protection of the populace in North Carolina.

Secretary Hooks, or his designee, shall implement the Plan in coordination with the Secretary of the Department of Health and Human Services, Dr. Mandy Cohen, and the State Health Director, Dr. Elizabeth Tilson.

### Section 4. Exercise of Powers

Further, Secretary Hooks, as Chief Coordinating Officer for the State of North Carolina, shall exercise the powers prescribed in N.C. Gen. Stat. §§ 143B-602 and 166A-19.11.

### Section 5. Maximum Hours of Service

In order to ensure adequacy and location of supplies and resources to respond to COVID-19, DPS, in conjunction with the North Carolina Department of Transportation ("DOT"), shall waive the maximum hours of service for drivers prescribed by DPS pursuant to N.C. Gen. Stat. § 20-381, if the driver is transporting medical supplies and other equipment in support of the Plan or other efforts to address the public health threat posed by COVID-19, through the duration of the State of Emergency or until further notice.

### Section 6. Height and Weight Restrictions

DPS, in conjunction with DOT, shall waive certain size and weight restrictions and penalties arising under N.C. Gen. Stat. §§ 20-116, 20-118, and 20-119, certain registration requirements and penalties arising under N.C. Gen. Stat. §§ 105-449.45, 105-449.47, and 105-449.49 for vehicles throughout the Emergency Area involved in transporting medical supplies and other equipment in support of the Plan or other efforts to address the public health threat posed by COVID-19. Furthermore, pursuant to N.C. Gen. Stat. § 20-118.1, DPS shall temporarily suspend weighing vehicles throughout the Emergency Area used to transport medical supplies and other equipment in support of the Plan or other efforts to address the public health threat posed by COVID-19. Furthermore, pursuant to N.C. Gen. Stat. § 20-118.1, DPS shall temporarily suspend weighing vehicles used to transport livestock, poultry, or crops to include timber ready to be harvested and feed to livestock and poultry in the Emergency Area.

### Section 7. Unwaived Size and Weight Restrictions

I. Notwithstanding the waivers set forth above in Section 6, size and weight restrictions and penalties have not been waived under the following conditions:

   a. When the vehicle weight exceeds the maximum gross weight criteria established by the manufacturer (GVWR) or 90,000 pounds gross weight, whichever is less.
   b. When the tandem axle weight exceeds 42,000 pounds and the single axle weight exceeds 22,000 pounds.
   c. When a vehicle and vehicle combination exceed twelve (12) feet in width and the total overall vehicle combination's length exceeds seventy-five (75) feet from bumper to bumper.
   d. Vehicles and vehicle combinations subject to exemptions or permits by authority of this Executive Order shall not be exempt from the requirement of having (i) a yellow banner on the front and rear that is seven (7) feet long and eighteen (18) inches wide and bears the legend "Oversized Load" in ten (10) inch black letters, 1.5 inches wide and (ii) red flags measuring eighteen (18) inches square on all sides at the widest point of the load. When operating between sunset and sunrise, a certified escort shall be required for loads exceeding eight (8) feet 6 inches in width.

II. Vehicles subject to this Executive Order shall adhere to the following conditions:

   a. The size and weight exemption for vehicles will be allowed on all DOT designated routes, except those routes designated as light traffic roads under N.C. Gen. Stat. § 20-118. This Order shall not be in effect on bridges posted pursuant to N.C. Gen. Stat. § 136-72.
   b. The waiver of regulations under Title 49 of the Code of Federal Regulations ("Federal Motor Carrier Safety Regulations") does not apply to the Commercial Drivers' License and Insurance Requirements. This waiver shall be in effect for thirty (30) days or the duration of the emergency, whichever is less.
   c. Upon request by law enforcement officers, exempted vehicles must produce documentation sufficient to establish that their loads are limited to medical supplies and other equipment to be used in support of the Plan or other efforts to address the public health threat posed by COVID-19.

III. The North Carolina State Highway Patrol shall enforce the conditions set forth in Sections 5 through 8 of this Executive Order in a manner that does not endanger North Carolina motorists.

### Section 8. Additional Transportation Waivers

Vehicles subject to this Executive Order shall be exempt from the following registration requirements:

a. The requirement to obtain a temporary trip permit and pay the associated $50.00 fee listed in N.C. Gen. Stat.§ 105-449.49.
b. The requirement of filing a quarterly fuel tax return as the exemption in N.C. Gen. Stat.§ 105-449.45(b)(1) applies.
c. The registration requirements under N.C. Gen. Stat.§ 20-382.1 concerning intrastate for hire authority and N.C. Gen. Stat.§ 20-382 concerning interstate for-hire authority; however, vehicles shall maintain insurance as required as required by law.
d. Non-participants in North Carolina's International Registration Plan and International Fuel Tax Agreement will be permitted to enter North Carolina in accordance with the exemptions identified by this Executive Order.

### Section 9. Consumer Protection

Pursuant to N.C. Gen. Stat. § 166A-19.23, this declaration triggers the prohibition against excessive pricing as provided in N.C. Gen. Stat. §§ 75-37 and 75-38.

I further hereby encourage the North Carolina Attorney General to use all resources available to monitor reports of abusive trade practices towards consumers and make readily available opportunities to report price gouging as well as unfair and deceptive trade practice under Chapter 75 of the North Carolina General Statutes to the public.

### Section 10. Task Force

I hereby memorialize the establishment of the Governor's Novel Coronavirus Task Force on COVID-19 ("Task Force"). The Director of Emergency Management and the State Health Director shall continue to serve as co-chairs of the Task Force. The Task Force shall continue to work with state, local, and federal partners in responding to challenges posed by COVID-19.

### Section 11. State Employee Policy Guidance

a. I hereby authorize hiring of temporary employees and contractors to support NCDHHS and local health departments in responding to the threats posed by COVID-19.

b. I hereby authorize the State Health Director to monitor areas of concentration of COVID-19 and make recommendations regarding travel restrictions for travel of state employees conducting state business. Agencies shall have the authority to cancel, restrict or postpone travel of state employees as needed to protect the wellbeing of others. Agencies are urged to cancel travel to restricted areas (as defined by the Division of Public Health of NCDHHS and the CDC). Exceptions to travel restrictions may be needed based on the unique circumstances or job duties of state employees.

### Section 12. Public Health Surveillance and Control Measures

Notwithstanding the public health authorities in place under Chapter 130A of the North Carolina General Statutes, I hereby order the State Health Director to work with local health directors to implement public health surveillance and control measures where appropriate for individuals who have been diagnosed with or are at risk of contracting COVID-19 in order to control or mitigate spread of the disease. I hereby order the State Health Director to utilize all authorities under N.C. Gen. Stat. Chapter 130A to obtain information and records necessary to prevent, control, or investigate COVID-19.

### Section 13. Laboratory Testing

I hereby order the State Health Director to work with the State Laboratory of Public Health to maximize the availability of laboratory testing for COVID-19.

I further encourage private laboratories and universities to take all reasonable steps to expand COVID-19 testing capacity.

### Section 14. Right of Entry and Disinfection for Local Health Departments and NCDHHS Secretary

With the concurrence of the Council of State and notwithstanding the public health authorities in place under Chapter 130A of the North Carolina General Statutes, I hereby grant local health departments, the Secretary of NCDHHS, and Division of Public Health employees serving the Secretary of NCDHHS' agents, and on her direction, a right of entry into public places for the purposes of assisting with or investigating potential COVID-19 cases or exposure and requiring cleaning and disinfecting measures to help control transmission of COVID-19.

### Section 15. Cleaning of Regulated Facilities

With the concurrence of the Council of State, I hereby waive restrictions related to the type of product or chemical concentration used to control COVID-19 at facilities whose sanitation is regulated by NCDHHS, if conducted and handled in a safe manner and approved by the local health department in consultation with the Division of Public Health of NCDHHS. The State Health Director may issue additional orders or regulations consistent with the state's Public Health Law to regulate the sanitation of public facilities regulated by NCDHHS or local health departments.

### Section 16. Out of State Health Care Licensure and Additional Testing Resources

With the concurrence of the Council of State, I hereby temporarily waive North Carolina licensure requirements for health care and behavioral health care personnel who are licensed in another state, territory, or the District of Columbia to provide health care services within the Emergency Area.

With the concurrence of the Council of State, and in the interest of alleviating immediate human suffering, nothing in Subchapters 32B, 32M, or 32S of Article 21 of the North Carolina Administrative Code shall be interpreted to prevent physicians, nurse practitioners, and physician assistants from issuing a standing order for qualified agents or employees who are working under the direct supervision of a physician, physician assistant or nurse practitioner to collect throat or nasopharyngeal swab specimens from individuals suspected of suffering from a COVID-19 infection, for purposes of testing.

### Section 17. Federal Support

I further direct Secretary Hooks, or his designee, to seek assistance from any and all agencies of the United States Government as may be needed to address the emergency and seek reimbursement for costs incurred by the state in responding to this emergency.

### Section 18. Local County Public Health Aid Funding Formula

With the concurrence of the Council of State, I hereby grant the Secretary of NCDHHS, or her designee, the authority to waive the formula requirements of 15A NCAC 18A .2901 and adjust aid-to-county funding, if a local health department's resources are diverted in response to COVID-19.

### Section 19. Access to State Funds

I hereby order access to the State Emergency Response and Disaster Relief Fund to the extent necessary to cover costs associated with responding to this State of Emergency as provided in N.C. Gen. Stat. § 166A-19.42, including but not limited to the substance of this Executive Order.

### Section 20. Purchase and Contract Regulation Waivers

With the concurrence of the Council of State, I hereby temporarily waive Sections .0301 through .0317 of Chapter 5B in Title 1 in the North Carolina Administrative Code to the extent necessary to permit NCDHHS, DPS, and local governmental entities to enter into contracts to secure resources and equipment needed to respond to COVID-19.

In addition to the provisions in Section 11, I further order all components of state government to expedite and prioritize the leasing of real property, including but not limited to, laboratories and health care facilities in order to provide the state with the resources needed to address COVID-19.

### Section 21. Cost Sharing Reduction

Pursuant to N.C. Gen. Stat. § 166A-19.30(a)(1), I hereby direct NCDHHS and the North Carolina Department of Insurance to immediately work with health insurance plans operating in the state to identify any burdens for testing for COVID-19 as well as access to prescription drugs and telehealth services, as needed, in order to reduce cost-sharing (including, but not limited to, co-pays, deductibles, or coinsurance) to zero for all medically necessary screening and testing for COVID-19.

### Section 22. Clinical Coverage Policy

With the concurrence of the Council of State, and in order to provide the immediate relief of human suffering, I hereby temporarily waive the regulatory requirements and suspend the enforcement of the statutory requirements under N.C. Gen. Stat. § 108A-54.2 for modifications of Medicaid Clinical Coverage Policy.

I order the NCDHHS, Division of Health Benefits to create coverage policies necessary for Medicaid and Health Choice Beneficiaries to receive medically necessary services for testing and treatment of COVID-19 and to create coverage policies or modify existing policies that will allow beneficiaries to continue to receive necessary services without disruption during the State of Emergency.

### Section 23. Inapplicability of Section 166A-19.30(c)

This Executive Order does not prohibit or restrict lawfully possessed firearms or ammunition or impose any limitation on the consumption, transportation, sale or purchase of alcoholic beverages as provided in N.C. Gen. Stat. § 166A-19.30(c).

### Section 24. Distribution

I hereby order that this Executive Order be: (1) distributed to the news media and other organizations calculated to bring its contents to the attention of the general public; (2) promptly filed with the Secretary of DPS, the Secretary of State, and the superior court clerks in the counties to which it applies, unless the circumstances of the State of Emergency would prevent or impede such filing; and (3) distributed to others as necessary to ensure proper implementation of this Executive Order.

### Section 25. Effective Date

This Executive Order is effective immediately and shall remain in effect until rescinded.

**IN WITNESS WHEREOF**, I have hereunto signed my name and affixed the Great Seal of the State of North Carolina at the Capitol in the City of Raleigh, this 10th day of March in the year of our Lord two thousand and twenty.

_____
Roy Cooper
Governor

**ATTEST:**

_____
Elaine F. Marshall
Secretary of State