

# State of North Carolina

## ROY COOPER
### GOVERNOR

MARCH 17, 2020

**EXECUTIVE ORDER NO. 118**

**LIMITING OPERATIONS OF RESTAURANTS AND BARS AND BROADENING
UNEMPLOYMENT INSURANCE BENEFITS IN RESPONSE TO COVID-19**

**WHEREAS**, the undersigned issued Executive Order No. 116 on March 10, 2020  which declared a State of Emergency to coordinate the State's response and protective actions to address the Coronavirus Disease 2019 (COVID-19) public health emergency and to provide for the health, safety, and welfare of residents and visitors located in North Carolina ("Declaration of a State of Emergency"); and

**WHEREAS**, the World Health Organization declared COVID-19 a global pandemic on March 11, 2020; and

**WHEREAS**, on March 13, 2020, the President of the United States declared the ongoing COVID-19 outbreak a pandemic of sufficient severity and magnitude to warrant an emergency declaration for all states, tribes, territories, and the District of Columbia pursuant to section 501(b) of the Robert T. Stafford Disaster Relief and Emergency Assistance Act, 42 U.S.C. 5121-5207 (the "Stafford Act"); and

**WHEREAS**, on March 13, 2020, the President of the United States pursuant to Sections 201 and 301 of the National Emergencies Act, 50 U.S.C. § 1601, *et seq.* and consistent with Section 1135 of the Social Security Act, as amended (42 U.S.C. § 1320b-5), declared that the COVID-19 outbreak in the United States constitutes a national emergency, retroactive to March 1, 2020; and

**WHEREAS**, on March 14, 2020, the undersigned issued Executive Order No. 117 which prohibited mass gatherings of more than one hundred (100) people in the State of North Carolina and closed K-12 public schools to limit the spread of COVID-19; and

**WHEREAS**, on March 15, 2020, the Centers for Disease Control ("CDC") updated their guidance for large events and mass gatherings, and recommended that for the next eight (8) weeks, organizers (whether groups or individuals) cancel or postpone in-person events that consist of fifty (50) people or more throughout the United States; and

**WHEREAS**, on March 16, 2020, the White House issued new guidelines called The President's Coronavirus Guidelines for America -- 15 Days to Slow the Spread of Coronavirus (COVID-19), calling on people to "avoid social gatherings in groups of more than ten (10) people"; and

**WHEREAS**, the undersigned, pursuant to Section 401 of the Stafford Act is requesting a major disaster declaration from the United States Federal Government; and

WHEREAS, the North Carolina Department of Health and Human Services("NCDHHS") confirmed that the number of cases of COVID-19 in North Carolina continues to rise; and

WHEREAS, Executive Order No. 116 invoked the Emergency Management Act, and authorizes the Governor to exercise the powers and duties set forth therein to direct and aid in the response to, recovery from, and mitigation against emergencies; and

WHEREAS, the Governor has established the Novel Coronavirus Task Force on COVID-19 to work with state, local, and federal partners in responding to challenges posed by COVID-19; and

WHEREAS, NCDHHS has organized a Public Health Incident Management Team to manage the public health impacts of COVID-19 in this state; and

WHEREAS, COVID-19 has caused and will continue to cause substantial economic disruption in North Carolina, including disruptions to employees and employers; and

WHEREAS, pursuant to N.C. Gen. Stat. § 166A-19.30(a)(1), the undersigned may utilize all available State resources as reasonably necessary to cope with an emergency, including the transfer and direction of personnel or functions of State agencies or units thereof for the purpose of performing or facilitating emergency services; and

WHEREAS, the Governor, Secretary of Public Safety, and Director of Emergency Management have the authority to act under N.C. Gen. Stat. §§ 166A-19.10, 166A-19.12, and 166A-19.30(a)-(b); and

WHEREAS, pursuant to N.C. Gen. Stat. § 166A-19.10(b)(4) gives the Governor the authority to "cooperate and coordinate" with the President of the United States; and

WHEREAS, pursuant to N.C. Gen. Stat. § 166A-19.12(3)(e), the Division of Emergency Management must coordinate with the State Health Director to revise the North Carolina Emergency Operations Plan as conditions change, including making revisions to set "the appropriate conditions for quarantine and isolation in order to prevent the further transmission of disease; and

WHEREAS, pursuant to N.C. Gen. Stat. § 166A-19.30(a)(2), during a Gubernatorially declared State of Emergency, the Governor has the power to "give such direction to state and local law enforcement officers and agencies as may be reasonable and necessary for the purpose of securing compliance with the provisions of this article; and

WHEREAS, pursuant to N.C. Gen. Stat. § 130A-145(a), the State Health Director has the power to exercise quarantine and isolation authority when the public health is endangered; and

WHEREAS, quarantine authority is defined by N.C. Gen. Stat. § 130A-2(7a) to mean the authority to issue an order to limit the freedom of movement or action of persons or animals which been exposed to or are reasonably suspected of having been exposed to a communicable disease or communicable condition for a period of time as may be necessary to prevent the spread of that disease; and

WHEREAS, under N.C. Gen. Stat. § 130A-2(3), an "imminent hazard" is defined as a situation that is likely to cause an immediate threat to human life, an immediate threat of serious physical injury, an immediate threat of serious adverse health effects, or a serious risk of irreparable damage to the environment if no immediate action is taken; and

WHEREAS, under N.C. Gen. Stat. § 130A-20(a), if the Secretary of Health and Human Service determines that an imminent hazard exists, the Secretary may order the owner, lessee, operator, or other person in control of the property to abate the imminent hazard; and

WHEREAS, quarantine authority is defined by N.C. Gen. Stat. § 130A-2(7a) to also mean the authority to issue an order to limit access by any person or animal to an area of facility that may be contaminated with an infection agent; and

WHEREAS, further action is necessary to protect the health and safety of the residents of North Carolina, slow the spread of the COVID-19 outbreak, protect our most vulnerable citizens, and avoid strain on our health care system; and

**WHEREAS**, the undersigned has sought and obtained the necessary concurrence from the Council of State consistent with the Governor's emergency powers authority in N.C. Gen. Stat. § 166A-19.30(b) for Sections 2 and 3 of this Order, and reserves the right to act under N.C. Stat. §§ 166A-19.10 and 166A-19.30(a).

**NOW, THEREFORE**, by the authority vested in me as Governor by the Constitution and the laws of the State of North Carolina, **IT IS ORDERED**:

## Section 1. Limiting the Sale of Food and Beverages, to Carry-Out, Drive-Through, and Delivery Only.

(a) Pursuant to the following authorities, the Governor, in consultation and at the recommendation of the state Secretary of Health and Human Services, the State Emergency Management Director, and the State Health Director, orders the following limitations on the sale of food and beverages to carry-out, drive-through, and delivery only:

   (i)   Per N.C. Gen. Stat. §§ 166A-19.30(c),-19.31(b)(2), the Governor has authority to restrict or prohibit the operation of business establishments and other place to or from which people may travel or at which they may congregate;

   (ii)  Per N.C. Gen. Stat. § 166A-19.10(b)(4), giving the Governor authority to "cooperate and coordinate" with the President of the United States, who issued guidelines directing the reduction of the congregating of persons to no more than ten (10) people the President's Coronavirus Guidelines for America, March 16, 2020, and this Order is cooperating therewith;

   (iii) Per N.C. Gen. Stat. § 166A-19.12(3)(e), the Division of Emergency Management must coordinate with the State Health Director to revise the North Carolina Emergency Operations Plan as conditions change, including making revisions to set "the appropriate conditions for quarantine and isolation in order to prevent the further transmission of disease," and the Emergency Management Director and State Health Director having done so, have recommended the Governor order the actions identified in this Section;

   (iv)  Per N.C. Gen. Stat. § 130A-20(a), the Secretary has determined an imminent hazard exists and that entities subject to this Section must limit the sale of food and beverages to carry-out, drive-through, and delivery only in order to abate the hazard, and has issued an order of abatement dated March 17, 2020;

   (v)   Per N.C. Gen. Stat. § 130A-145(a), the State Health Director is exercising quarantine and isolation authority to limit access to facilities that sell food and beverage to carry-out, drive-through and delivery services only.

   (vi)  Per N.C. Gen. Stat. § 166A-19.30(a)(2), during a Gubernatorially declared State of Emergency, the Governor has the power to "give such direction to state and local law enforcement officers and agencies as may be reasonable and necessary for the purpose of securing compliance with the provisions of this article that restaurants are restricted to carry-out, drive-through, delivery, and onsite consumption in outdoor seating areas, subject to mass gathering restrictions to create an environment where staff and patrons maintain social distancing (at least 6 feet from other people) whenever possible. Bars are directed to close. These restrictions are effective as of 5:00pm, Tuesday, March 17, 2020 until March 31, 2020, or until this Order is rescinded or replaced.

(b) For the purposes of this Order, restaurants are defined as permitted food establishments, under N.C. Gen. Stat. § 130A-248, and other establishments that both prepare and serve food, including but not limited to, restaurants, cafeterias, food halls, dining halls, food kiosks at airports and shopping centers, or educational institutions, ("food courts"), as well as private or members-only clubs where food and beverages are permitted to be consumed on premises.

(c) For purposes of this Order, bars are defined as establishments that are not restaurants and that have a permit to sell alcoholic beverages for onsite consumption, under N.C. Gen. Stat. § 18B-1001.

(d) This Order does not direct the closure of retail beverage venues that currently provide for the sale of beer, wine, and liquor for off-site consumption only. It also does not require the closure of production operations at breweries, wineries, or distilleries.

(e) This Order does not affect grocery stores, pharmacies, convenience stores, gas stations and charitable food distribution sites to the extent they sell or distribute prepared food. However, sit-down food or beverage service within these facilities is prohibited.

(f) If the Alcoholic Beverage Control Commission "ABC Commission" identifies other state laws, regulations, and policies that may affect bars, restaurants, and other dining establishments identified in this Section, it is directed to inform the Office of the Governor in writing. Upon written authorization from the Office of the Governor, the ABC Commission may interpret flexibly, modify, or waive those state laws, regulations and policies, as appropriate, and to the maximum extent permitted under applicable state and federal law, to effectuate the purposes of this Order.

(g) In light of this Executive Order, Executive Order No. 117 Section 1(b) (March 14, 2020) is revised as follows:

"A mass gathering does not include normal operations at airports, bus and train stations, medical facilities, libraries, shopping malls and centers. It also does not include office environments, factories, grocery stores, and child care centers."

These locations or facilities, however, are subject to the dine-in food and beverage restrictions listed in this Order.

## Section 2. Unemployment Insurance Policy Related to COVID-19

The undersigned has sought and obtained the necessary concurrence from the Council of State consistent with the Governor's emergency powers authority in N.C. Gen. Stat. § 166A-19.30 (b), and reserves the right to act under N.C. Stat. §§ 166A-19.10 and 166A-19.30(a).

The Department of Commerce, through the Secretary of Commerce and Assistant Secretary of the Division of Employment Security, is directed to ensure that individuals who, as a result of COVID-19, are separated from employment, have had their hours of employment reduced, or are prevented from working due to a medical condition caused by COVID-19 or due to communicable disease control measures, shall be eligible for unemployment benefits to the maximum extent permitted by federal law. For purposes of this Executive Order, communicable disease control measures shall include quarantine or isolation directives or orders related to COVID-19 issued by the State of North Carolina, the federal government, a local governmental entity, or a medical or public health professional.

## Section 3. Unemployment Insurance Changes

(a) To provide the necessary unemployment benefits to those affected by COVID-19, the Department of Commerce is authorized, to the maximum extent permitted under federal law, and for so long as the Declaration of a State of Emergency regarding COVID-19, dated March 10, 2020, remains in place, to interpret flexibly or waive, as appropriate, the following:

  i.    the one-week waiting period for benefits (N.C. Gen. Stat. § 96-14.1(b));

  ii.   the able to work and available to work requirements (N.C. Gen. Stat. § 96-14.9(b));

  iii.  the work search requirements (N.C. Gen. Stat. § 96-14.9(b));

  iv.   the actively seeking work requirements (N.C. Gen. Stat. § 96-14.9(e)); and

  v.    the "lack of work" requirement of the unemployed provisions of N.C. Gen. Stat. § 96-15.01(b)(2)(a).

(b) The Department of Commerce is further directed not to allocate charges to employers' accounts for individuals who are paid benefits for reasons related to COVID-19 (N.C. Gen. Stat. § 96-11.2 and 96-11.3(b)). The Department of Commerce shall separately account for these expenditures so that the State of North Carolina can seek reimbursement from the federal government.

(c) If the Department of Commerce identifies other state laws, regulations, and policies that may inhibit the fair and timely distribution of unemployment benefits to those affected by COVID-19, it is directed to inform the Office of the Governor in writing. Upon written authorization from the Office of the Governor, the Department of Commerce may interpret flexibly, modify, or waive those state laws, regulations, and policies, as appropriate, to the maximum extent permitted under applicable federal law to effectuate the purposes of this Order.

(d) The Department of Commerce is ordered to postpone all mandatory in-person contact with individuals seeking unemployment benefits, including but not limited to the Employability Assessment Interview, as long as the State of Emergency for COVID-19 remains in effect. The Department of Commerce is further ordered to provide reasonable means for the filing of initial claims and weekly certifications, including both telephone and internet access.

## Section 4. Enforcement

(a) Pursuant to N.C. Gen. Stat. § 166A-19.30(a)(2), the provisions of this Order shall be enforced by state and local law enforcement officers.

(b) Violations of this Order may be subject to prosecution pursuant to N.C. Gen. Stat. § 166A-19.30(d) and is punishable as a Class 2 misdemeanor in accordance with N.C. Gen. Stat. § 14-288.20A.

## Section 5.  Effective Date

Section 1 of this Executive Order is effective as of 5:00 pm, Tuesday, March 17, 2020 through March 31, 2020.  The remainder of this Executive Order is effective immediately and shall remain in effect until rescinded or superseded by another applicable Executive Order. An Executive Order rescinding the Declaration of a State of Emergency will automatically rescind this Executive Order.

**IN WITNESS WHEREOF,** I have hereunto signed my name and affixed the Great Seal of the State of North Carolina at the Capitol in the City of Raleigh, this 17th day of March in the year of our Lord two thousand and twenty.

_____
Roy Cooper
Governor

**ATTEST:**

_____
Rodney S. Maddox
Chief Deputy Secretary of State