

# State of North Carolina

**ROY COOPER**
GOVERNOR

March 23, 2020

**EXECUTIVE ORDER NO. 120**

**ADDITIONAL LIMITATIONS ON MASS GATHERINGS, RESTRICTIONS ON VENUES AND LONG TERM CARE FACILITIES, AND EXTENSION OF SCHOOL CLOSURE DATE**

**WHEREAS**, the undersigned issued Executive Order No. 116 on March 10, 2020, which declared a State of Emergency to coordinate the State's response and protective actions to address the Coronavirus Disease 2019 (COVID-19) public health emergency and to provide for the health, safety, and welfare of residents and visitors located in North Carolina ("Declaration of a State of Emergency"); and

**WHEREAS**, the World Health Organization declared COVID-19 a global pandemic on March 11, 2020; and

**WHEREAS**, on March 13, 2020, the President of the United States declared the ongoing COVID-19 outbreak a pandemic of sufficient severity and magnitude to warrant an emergency declaration for all states, tribes, territories, and the District of Columbia pursuant to section 501(b) of the Robert T. Stafford Disaster Relief and Emergency Assistance Act, 42 U.S.C. § 5121-5207 (the "Stafford Act"); and

**WHEREAS**, on March 13, 2020, the President of the United States pursuant to Sections 201 and 301 of the National Emergencies Act, 50 U.S.C. § 1601, *et seq.* and consistent with Section 1135 of the Social Security Act, as amended (42 U.S.C. § 1320b-5), declared that the COVID-19 pandemic in the United States constitutes a national emergency beginning March 1, 2020; and

**WHEREAS**, on March 14, 2020, the undersigned issued Executive Order No. 117, which prohibited mass gatherings to no more than one hundred (100) people in the State of North Carolina and closed K-12 public schools to limit the spread of COVID-19; and

**WHEREAS**, on March 17, 2020, the undersigned issued Executive Order No. 118, which limited operations of restaurants and bars and broadened unemployment insurance benefits in response to COVID-19; and

**WHEREAS**, on March 20, 2020, the undersigned issued Executive Order No. 119, which provides provisions to improve access to childcare and helps facilitate critical motor vehicle operations; and

**WHEREAS**, the North Carolina Department of Health and Human Services ("NCDHHS") confirmed the number of cases of COVID-19 in North Carolina continues to rise and has lab documentation of community spread; and

**WHEREAS**, on March 13, 2020, NCDHHS issued a document entitled "Recommendations on Visitation in Long Term Care Facilities to Reduce Risk of Transmission of COVID-19" urging limitations on visitors at long term care facilities in the state to help limit the spread of COVID-19 among at-risk populations; and

**WHEREAS**, NCDHHS has now recommended that increased measures are required to control the spread of COVID-19 in long term care settings; and

**WHEREAS**, needed control cannot be imposed locally because local authorities in some jurisdictions have not enacted appropriate ordinances or issued appropriate declarations as authorized by N.C. Gen. Stat. § 166A-19.31; and

**WHEREAS**, the area in which the emergency exists has spread across local jurisdictional boundaries, and the legal control measures of the jurisdictions are conflicting or uncoordinated to the extent that efforts to protect life and property are, or unquestionably will be, severely hampered; and

**WHEREAS**, the area subject to the COVID-19 emergency is statewide, covering the jurisdictions of multiple city, county and tribal governments, thus making legal control measures difficult to coordinate and severely hampering efforts to protect life and property; and

**WHEREAS**, the undersigned has determined that local control measures for the emergency, taken alone, are insufficient to assure adequate protection for lives and property because the scale of the COVID-19 emergency is so great that it exceeds the capability of local government officials to cope with it; and

**WHEREAS**, the undersigned has determined that the measures identified below are necessary for the purpose of taking care that North Carolinians health, safety, and welfare are protected in accordance with the laws of the state; and

**WHEREAS**, further action is necessary to protect the health and safety of the residents of North Carolina, slow the spread of the COVID-19 pandemic, reduce the number of people infected, avoid strain on our healthcare system, and to address adverse economic impacts that will lead to additional human suffering upon individuals adversely impacted by the COVID-19 pandemic; and

**WHEREAS**, Executive Order No. 116 invoked the Emergency Management Act, and authorizes the Governor to exercise the powers and duties set forth therein to direct and aid in the response to, recovery from, and mitigation against emergencies; and

**WHEREAS**, pursuant to N.C. Gen. Stat. § 166A-19.30(a)(1), the undersigned may utilize all available state resources as reasonably necessary to cope with an emergency, including the transfer and direction of personnel or functions of state agencies or units thereof for the purpose of performing or facilitating emergency services; and

**WHEREAS**, pursuant to N.C. Gen. Stat. § 166A-19.30(c) during a gubernatorially declared state of emergency, the undersigned determined that local control of the emergency is insufficient to assure adequate protection for lives and property because the area in which the emergency exists has spread across local jurisdictional boundaries; and the legal control measures are conflicting or uncoordinated to the extent that efforts to protect life and property are, or unquestionably will be, severely hampered; and

**WHEREAS**, based upon the findings above, N.C. Gen. Stat. §§ 166A-19.31(b)(1), (b)(2), and (b)(5) authorizes the Governor to prohibit or restrict the operation of business establishments, the congregation of people as well as the movement of people in public places and take other activities or conditions the control of which may be reasonably necessary to maintain order and protect lives or property during the state of emergency

**NOW, THEREFORE**, by the authority vested in me as Governor by the Constitution and the laws of the State of North Carolina, **IT IS ORDERED**:

### Section 1. Mass Gathering

For the reasons and pursuant to the authority set forth above:

a. Executive Order No. 117 § 1 is amended as follows:

   1. A mass gathering is defined as any event or convening that brings together more than fifty (50) persons in a single room or single space at the same time, such as an auditorium, stadium, arena, large conference room, meeting hall, or any other confined indoor or outdoor space. This includes parades, fairs and festivals.

   2. A mass gathering does not include normal operations at airports, bus and train stations, medical facilities, shopping malls and centers. It also does not include office environments, factories, grocery stores, and child care facilities.

   3. Pursuant to N.C. Gen. Stat. §§ 166A-19.30(a)(2) and 19.30(c), the provision of this section shall be enforced by state and local law enforcement officers.

b. In addition to the restrictions on mass gatherings identified in Executive Order No. 117 § 1, entertainment facilities without a retail or dining component are ordered to close at 5:00 pm on Wednesday, March 25, 2020, though any retail or dining component may operate within that establishment solely for that purpose. Any dining facilities may operate only within the restrictions for restaurants as set out in Executive Order No. 118. These facilities include, but are not limited to, the following types of business:

   - Bingo Parlors, including Bingo sites operated by charitable organizations
   - Bowling Alleys
   - Indoor Exercise Facilities (e.g. gyms, yoga studios, martial arts facilities, indoor trampoline and rock climbing facilities)
   - Health Clubs
   - Indoor/ Outdoor Pools
   - Live Performance Venues
   - Movie Theaters
   - Skating Rinks
   - Spas
   - Gaming and business establishments which allow gaming activities (e.g. video poker, gaming, sweepstakes, video games, arcade games, pinball machines or other computer, electronic or mechanical devices played for amusement)

c. In addition, because the ability to practice the social distancing necessary to reasonably protect against COVID-19 is significantly reduced in certain establishments where individuals are in close proximity for extended periods of time, or service personnel are in direct contact with clients, personal care and grooming businesses, including but not limited to the following, are also ordered to close:

   - Barber Shops
   - Beauty Salons (including waxing and hair removal centers)
   - Hair Salons
   - Nail Salons/Manicure/Pedicure Providers
   - Massage Parlors
   - Tattoo Parlors

d. Violations of this section or orders issued pursuant to N.C. Gen. Stat. § 166A-19.30 may be subject to prosecution pursuant to N.C. Gen. Stat. § 166A-19.30(d) and are punishable as a Class 2 misdemeanor in accordance with N.C. Gen. Stat. § 14-288.20A.

### Section 2. Mandatory Local Government Operations

a. Consistent with my authority under N.C. Gen. Stat. §§ 166A-19.30(c)(1) and (c)(2), and to the extent that local government functions are required under state and federal law, I hereby direct the appropriate local government agencies and officials to continue to exercise their responsibilities, including but not limited to local county Department of Social Services

of Social Services ("DSS") offices, Health Departments, Registers of Deeds, and other local government functions that are required to protect lives and property.

b. Notwithstanding Section (a) of this Section, local government must take appropriate precautions to maintain the health of the general public and their employees who are required to perform their official duties in a manner that brings them in contact with the general public by putting in place appropriate public health measures, such as social distancing, use of reasonable personal protective equipment, and offering reasonable accommodations to employees who provide services to the public with consideration for their health.

### Section 3. Long Term Care Visitation Limitations

a. Long term care facilities shall restrict visitation of all visitors and non-essential health care personnel, except for certain compassionate care situations, for example, an end-of-life situation.

b. This restriction does not include essential health care personnel.

c. For purposes of this Executive Order only, long term care facilities include all of the following:

  i. Skilled nursing facilities;
  ii. Adult care homes;
  iii. Family care homes;
  iv. Mental health group homes; and
  v. Intermediate care facilities for individuals with intellectual disabilities.

### Section 4. Continued School Closure

For the reasons and pursuant to the authority set forth above:

Executive Order No. 117 § 2 is amended as follows:

I hereby direct that all public schools close for students effective Monday, March 16, 2020, as set forth in Executive Order No. 117, through Friday, May 15, 2020, unless extended beyond that date.

### Section 5. Effective Date

This Executive Order is effective at 5:00 pm Wednesday, March 25, 2020, and shall remain in effect for thirty (30) days unless rescinded or superseded by another applicable Executive Order. Section 4 of this Executive Order is effective Monday, March 16, 2020, as set forth in Executive Order No. 117, through Friday, May 15, 2020. An Executive Order rescinding the Declaration of a State of Emergency will automatically rescind this Executive Order.

**IN WITNESS WHEREOF,** I have hereunto signed my name and affixed the Great Seal of the State of North Carolina at the Capitol in the City of Raleigh, this 23rd day of March in the year of our Lord two thousand and twenty.

_____
Roy Cooper
Governor

**ATTEST:**

_____
Elaine F. Marshall
Secretary of State