# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

RONALD LEE MILLER,

                Petitioner,                Case No: 16-20222

-v-                                          Honorable Arthur Tarnow

                                              Magistrate Judge R. Steven Whalen

UNITED STATES OF AMERICA,

                Respondent.

| Aldous Brant Cook | Paul J. Stablein |
|---|---|
| United States Attorney's Office | Paul Stablein, PLLC |
| Assistant United States Attorney | Attorney for Defendant |
| 211 West Fort Street, Suite 2001 | 380 N Old Woodward Ave, Ste 320 |
| Detroit, Michigan 48226 | Birmingham, Michigan 48009 |
| (313) 226-9553 | (248) 540-1600 |
| brant.cook@usdoj.gov | PaulStablein@StableinLaw.com |

## SUPPLEMENT TO THE DEFENDANT'S MEMORANDUM IN SUPPORT OF PETITION FOR COMPASSIONATE RELEASE

NOW COMES the Defendant, Ronald Lee Miller, by and through his attorney, Paul Stablein, and in support of his Petition for Compassionate Release from Incarceration, supplements his petition and states as follows:

    1.      On March 24, 2020, this Honorable Court ordered the parties to provide the Court with memoranda regarding their respective positions on Mr. Miller's

petition for immediate compassionate release. 18 U.S.C. § 3582(c).₁ On March 30, 2020, the parties complied with the Court's order.

2. On March 31, 2020, the Court ordered that the parties file supplemental medical reports and administrative appeals records no later than Friday, April 3, 2020.

3. In accordance with the Court's March 31 order, Mr. Miller and the Government have obtained additional medical records and records of the Bureau of Prisons' (BOP's) rejection of Mr. Miller's request for compassionate release. The medical records are attached hereto as **Exhibit A**. The records demonstrating the exhaustion of Mr. Miller's administrative remedies are attached hereto as **Exhibit B**.

### I. Mr. Miller has Exhausted his Administrative Remedies

4. Section 3582(c)(1)(A) imposes "a statutory exhaustion requirement" that "must be strictly enforced." *United States v. Monzon*, No. 99 Cr. 157, 2020 WL 550220, at *2 (S.D.N.Y. Feb. 4, 2020).

---

₁ The First Step Act went into effect on December 21, 2018. See FSA of 2018, Pub. L. No. 115-391, 132 Stat. 5194. Before the passage of the First Step Act, only the Director of the Bureau of Prisons could file a motion for compassionate release. Section 603(b) of the Act modified 18 U.S.C. § 3582(c)(1)(A), however, with the intent of "increasing the use and transparency of compassionate release." Pub. L. No. 115-391, 132 Stat. 5194, at *5239 (capitalization omitted). That section now provides that a sentencing court may modify a sentence either on motion of the Director of the BOP "or upon motion of the defendant after [he] has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on [his] behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." 18 U.S.C. § 3582(c)(1)(A).

5. It is apparent from the records received thus far, that Mr. Miller has exhausted his administrative remedies through the BOP. Mr. Miller began his efforts to obtain relief from the BOP sometime in 2018. Counsel has obtained some records, but it is clear that the entirety of the record has not been made available to counsel for either party. Nonetheless, the timeline of Mr. Miller's efforts follows after his first request for relief in 2018:

- 10/4/2018  Warden's letter to Senator Stabenow  "Miller's case was reviewed in accordance with Bureau of Prisons Program Statement 5050.48, Compassionate Release, Elderly Inmates with Medical Conditions, and determined he does not meet the criteria for consideration of Compassionate Release."

- 12/29/2018  Regional Administrative Remedy Appeal completed

- 1/3/2019  Appeal received at Mid-Atlantic Regional Office

- 2/5/2019  Appeal rejected by Administrative Remedy Coordinator

- 2/25/2019  Second Appeal generated

- 6/24/2019  Warden's letter to Senator Stabenow, "Mr. Miller's reduction in sentence (Compassionate Release) request was denied."

6. It is unclear from the documents obtained thus far whether Mr. Millers second appeal in February was ever communicated to the regional office again. Regardless, it is clear that the facility had denied his request based upon the letters to the senator, and at least the regional administrator had denied the appeal in

3

February 2019. Therefore, Mr. Miller has exhausted his remedies available to him within the BOP.

7. Even if the Government argues that somehow Mr. Miller failed to comply with every detail of the administrative procedure provided by the BOP, strict compliance is not mandatory in every situation. "Even where exhaustion is seemingly mandated by statute or decisional law, the requirement is not absolute." *Washington v. Barr*, 925 F.3d 109, 118 (2d Cir. 2019). "First, exhaustion may be unnecessary where it would be futile, either because agency decisionmakers are biased or because the agency has already determined the issue",…or, "exhaustion may be unnecessary where pursuing agency review would subject plaintiffs to undue prejudice." *Id*.

8. The responses by the warden at FCI Butner to Senator Stabenow's inquiries are clear – Mr. Miller will not be granted relief from the facility. Further, his attempts at appealing those decisions also fell on deaf ears. The BOP has already decided the issue as reflected in the exhibits. Requiring further administrative efforts on Mr. Miller's behalf would clearly be futile. Moreover, pursuing any further review would clearly subject Mr. Miller to undue prejudice in light of the current state of affairs and the national pandemic.

## II. COVID-19 is an Extraordinary and Compelling Reason in Mr. Miller's Case

9. "We are in the midst of an unprecedented pandemic. COVID-19 has

paralyzed the entire world.  The disease has spread exponentially, shutting down schools, jobs, professional sports seasons, and life as we know it.  It may kill 200,000 Americans and infect millions more.[2]  At this point, there is no approved cure, treatment, or vaccine to prevent it.[3]" *United States v. Jeremy Rodriguez*, No. 2:03-CR-00271-AB-1, 2020 WL 1627331, at *1 (E.D. Pa. Apr. 1, 2020).

10. People with pre-existing medical conditions like Mr. Miller face a particularly high risk of dying or suffering severe health effects should they contract the disease.

11. Since Mr. Miller's March 30, 2020, filing, the dire situation facing federal prisoners across the country has only worsened.  As of 3:00PM, April 2, 2020, the BOP reports that a total of 75 inmates and 39 staff members have tested positive for COVID-19[4], including *10 inmates (up from just two inmates on March*

---

[2] Bobby Allyn, *Fauci Estimates That 100,000 To 200,000 Americans Could Die from the Coronavirus*, National Public Radio (Mar. 29, 2020), https://www.npr.org/sections/coronavirus-live-updates/2020/03/29/823517467/fauci-estimates-that-100-000-to-200-000-americans-could-die-from-the-coronavirus.

[3] *See* Pien Huang, *How the Novel Coronavirus and the Flu Are Alike . . . And Different*, National Public Radio (Mar. 20, 2020), https://www.npr.org/sections/goatsandsoda/2020/03/20/815408287/how-the-novel-coronavirus-and-the-flu-are-alike-and-different.

[4] The BOP website indicates that statistics are uploaded daily at 3:00PM. However, as of 4:15PM on April 3, 2020, the website represented only those statistics from April 2.  It appears that the reporting from the BOP of actual cases is underrepresenting the accurate number.  Inmates outnumber staff by a ratio of seven to one, so one would expect the number of cases in the inmate population would far exceed staff cases.  See, W. Pavlo, *Bureau Of Prisons Underreporting COVID-19 Outbreaks In Prison*, found at https://www.forbes.com/sites/walterpavlo/2020/04/01/bureau-of-prisons-underreporting-outbreaks-in-prison/#2a5469c37ba3.

*31) and 1 staff member at FCI Butner* where Mr. Miller is imprisoned.

12. As of 11:00AM, April 3, 2020, North Carolina has reported 2,093 cases of the virus resulting in hundreds of hospitalizations and 19 deaths. *See* North Carolina Department of Health and Human Services, *COVID-19 North Carolina Dashboard*, found at https://www.ncdhhs.gov/covid-19-case-count-nc#by-counties. Nationwide, White House Officials now predict that 100,000 to 240,000 people will die in the United States in the next two weeks. *See*, footnote 2, above.

13. The BOP has suspended the transfer of inmates for 30 days and it appears likely that the ban will be extended. *See United States v. Nkanga*, 2020 WL 1529535, at *2 (S.D.N.Y. Mar. 31, 2020) ("Judging from the federal government's most recent guidance, it is likely that the suspension will indeed be extended. See Michael D. Shear, *Trump Extends Social Distancing Guidelines Through End of April*, N.Y. Times (Mar. 29, 2020), available at https://www.nytimes.com/2020/03/29/us/politics/trump-coronavirus-guidelines.html.")

14. On March 23, 2020, the Centers for Disease Control and Prevention (CDC) acknowledged that correctional and detention facilities "present[ ] unique challenges for control of COVID-19 transmission among incarcerated/detained persons, staff, and visitors." Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities, Centers for

6

Disease Control (Mar. 23, 2020), available at https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html. Specifically, the CDC noted that many detention conditions create a heightened risk of danger to detainees. These include low capacity for patient volume, insufficient quarantine space, insufficient on-site medical staff, highly congregational environments, inability of most patients to leave the facility, and limited ability of incarcerated/detained persons to exercise effective disease prevention measures (e.g., social distancing and frequent handwashing). *Id*. The CDC recommended that all correctional facilities take preventative measures, including: ensuring an adequate supply of hygiene and medical supplies, allowing for alcohol-based sanitizer throughout facilities, providing no-cost soap to all inmates for frequent handwashing, cleaning and disinfecting frequently touched surfaces several times per day, performing pre-intake screening and temperature checks for all new entrants, increasing space between all detained persons to at least six feet, staggering meals, and having healthcare staff perform regular rounds. *Id.* Nonetheless, as the Court noted in *United States v Rodriguez, supra*, at *1, "Prisons are tinderboxes for infectious disease."

15.     The number of district courts that have granted release to detainees and inmates due to the dangerousness of the coronavirus pandemic is growing daily. *See,*

7

*United States v. Keith Kennedy*, Case No. 18-20315, 2020 WL 1493481 (E.D. Mich. Mar. 27, 2020) (post-plea presentence release of defendant whose pretrial release had been revoked. "[T]he COVID-19 pandemic constitutes an independent compelling reason" for temporary release and "is necessary for Defendant to prepare his pre-sentence defense."); *United States v. Wilson Perez*, No. 17 CR. 513-3 (AT), 2020 WL 1546422, at *4 (S.D.N.Y. Apr. 1, 2020) ("The benefits of keeping him in prison for the remainder of his sentence are minimal, and the potential consequences of doing so are extraordinarily grave." Compassionate release granted.); *United States v Andre Williams*, Case No. 04-cr-95/MCR, at *7 (N.D. Fla. April 1, 2020) ("[A]n outbreak of COVID-19 in Williams' facility would likely have fatal consequences for him. Based on these facts, the Court finds that Williams' deterioration in physical health is sufficiently serious to satisfy the medical criteria for a reduction in sentence." West Law citation unavailable; *United States v. Mclean*, Case. No. 19-cr-380 (D.D.C. Mar. 28, 2020) ("As counsel for the Defendant candidly concedes, the facts and evidence that the Court previously weighed in concluding that Defendant posed a danger to the community have not changed – with one exception. That one exception – COVID-19 – however, not only rebuts the statutory presumption of dangerousness, see 18 U.S.C. § 3142(e), but tilts the balance in favor of release."); *United States v. Teresa Ann Gonzalez*, No. 2:18-CR-0232-TOR-15, 2020 WL 1536155, at *3 (E.D. Wash. Mar. 31, 2020) ("Defendant is

the most susceptible to the devastating effects of COVID-19. She is in the most susceptible age category (over 60 years of age) and her COPD and emphysema make her particularly vulnerable." 18 U.S.C. § 3582(c)(1)(A)(i) compassionate release granted.); *United States v. Campagna*, No. 16 Cr. 78-01 (LGS), 2020 WL 1489829 (S.D.N.Y. Mar. 27, 2020) ("Defendant's compromised immune system, taken in concert with the COVID-19 public health crisis, constitutes an extraordinary and compelling reason to modify to Defendant's sentence on the grounds that he is suffering from a serious medical condition that substantially diminishes his ability to provide self-care within the environment of the RCC."); *United States v. Muniz*, No. 4:09-CR-0199-1, 2020 WL 1540325 (S.D. Tex. Mar. 30, 2020) ("Because Defendant is at high-risk for severe illness from COVID-19 and because inmates in detention facilities are particularly vulnerable to infection, the Court finds that Defendant has demonstrated an extraordinary and compelling reason for compassionate release.")

16. Even based upon the sparse medical records the Government obtained from the BOP, Exhibit A, Mr. Miller is at grave risk of a sever outcome should he contract the virus. Regardless of the BOP's position on Mr. Miller's hepatitis C and liver cancer diagnoses, the records indicate Mr. Miller is prescribed 14 different medications including three different inhalers in an effort to combat his chronic obstructive pulmonary disease (COPD). He suffers from heart disease and is ordered

to carry nitroglycerin tablets with him for acute chest pain.  He has cirrhosis of the liver.

17.   The Centers for Disease Control and Prevention have identified two specific groups of individuals that are at a higher risk for sever illness from the virus: people 65 years or older and people with underlying medical conditions.  The CDC identifies those medical conditions as, among others, "chronic lung disease," "serious heart conditions" and "liver disease."  Mr. Miller is severely at risk because of his age (69 years) and the fact that he suffers from three conditions the CDC has identified as placing him at high risk.  One condition would suffice to establish a person with an extraordinary and compelling reason to grant compassionate release.  Mr. Miller suffers from three in addition to his age.

WHEREFORE, Mr. Miller prays this Honorable Court for an order granting him immediate compassionate release with any terms and conditions the Court sees fit to impose as conditions of supervised release.

    Respectfully Submitted,

    /s/Paul J. Stablein  
    Paul J. Stablein  
    Paul Stablein, PLLC  
    Attorney for Defendant  
    380 North Old Woodward Ave  
    Suite 320  
    Birmingham, Michigan 48009  
    (248) 540-1600  
    PaulStablein@StableinLaw.com

DATED:     April 3, 2020

11

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

---

RONALD LEE MILLER,

                Petitioner,        Case No: 16-20222

-v-                                     Honorable Arthur Tarnow

                                        Magistrate Judge R. Steven Whalen

UNITED STATES OF AMERICA,

                Respondent.

---

| Aldous Brant Cook | Paul J. Stablein |
|---|---|
| United States Attorney's Office | Paul Stablein, PLLC |
| Assistant United States Attorney | Attorney for Defendant |
| 211 West Fort Street, Suite 2001 | 380 N Old Woodward Ave, Ste 320 |
| Detroit, Michigan 48226 | Birmingham, Michigan 48009 |
| (313) 226-9553 | (248) 540-1600 |
| brant.cook@usdoj.gov | PaulStablein@StableinLaw.com |

---

**BRIEF IN SUPPORT OF DEFENDANT'S SUPPLEMENT
TO THE DEFENDANT'S MEMORANDUM IN
SUPPORT OF PETITION FOR COMPASSIONATE RELEASE**

     As and for his brief, Mr. Miller incorporates those statements of fact and arguments of law as set forth in his concurrently filed Supplement to the Defendant's Memorandum in support of Petition for Compassionate Release as if the same were more fully set forth herein.

     WHEREFORE, Mr. Miller prays this Honorable Court for an order granting him immediate compassionate release with any terms and conditions the Court sees

12

fit to impose as conditions of supervised release.

                                        Respectfully Submitted,

                                        /s/Paul J. Stablein
                                        Paul J. Stablein
                                        Paul Stablein, PLLC
                                        Attorney for Defendant
                                        380 North Old Woodward Ave
                                        Suite 320
                                        Birmingham, Michigan 48009
                                        (248) 540-1600
                                        PaulStablein@StableinLaw.com

DATED:    April 3, 2020